UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCINE B. GOODMAN, THE LAW
OFFICES OF FRANCINE B. GOODMAN, P.C.,
                Plaintiffs,
    v.

SUSAN FISHER KAUFMAN, K&F WISH CO.,
LTD., S.F.K. CO., LTD., KAUFMAN & FISHER,
FISHER INVESTMENT GROUP,

                Defendants.

00 Civ. 4186 (SCR)
MEMORANDUM
DECISION AND
ORDER

---

STEPHEN C. ROBINSON, District Judge:

**I.**    **Factual Summary**

Francine B. Goodman ("Plaintiff"), an attorney proceeding pro se on behalf of herself personally and her law firm, The Law Offices of Francine B. Goodman, P.C. (the "Law Firm") (collectively known as "Plaintiffs"), worked with Susan Fisher Kaufman ("Defendant") in relation to Defendant's businesses—K&F Wish Co., Ltd. ("Wishco"), S.F.K. Co., Ltd., Kaufman & Fisher, and Fisher Investment Group (the "Businesses") (collectively known as "Defendants"). The undisputed facts are as follows. Defendant has known Plaintiff since she was a child. While Plaintiff attended law school in the early 1990s, Defendant employed Plaintiff as her secretary and personal assistant. In the late 1990s, Defendant formed Wishco, a New Jersey corporation, to sell "The Original Wish Doll" (the "Doll"), an idea Defendant fashioned. After informing Plaintiff of the new venture, Plaintiff soon began efforts on behalf of Defendant and Wishco to promote the Doll and performed those services until 2000. The details of Plaintiff's work and the existence and/or meaning of any agreements are in factual dispute between the parties.

The underlying dispute is whether the parties agreed that Defendant would transfer Plaintiff a portion of ownership in Wishco as compensation for Plaintiff's work or whether parties agreed, instead, that Defendant would compensate Plaintiff with a percentage of Wishco's stock and she would become a salaried employee of the company if she succeeded in raising venture capital for Wishco. Parties also dispute, *inter alia*, whether Plaintiff was working in legal or business capacity or both and whether parties agreed upon what percentage of the stock would be transferred to Plaintiff, if any.

## II.     Procedural Posture

Plaintiff brought suit under federal diversity jurisdiction and federal question jurisdiction on June 5, 2000, and the case was assigned to Judge Barrington Parker. Pursuant to a court order in November of 2000, Plaintiff filed an amended complaint on December 6, 2000. Due to Defendant's failure to appear, the Court requested that an affidavit be submitted by Defendant within in 10 days in an order dated January 18, 2001. Defendant responded properly and filed an answer to the amended complaint on February 15, 2001.

After several months of discovery and pretrial conferences, Magistrate Judge Lisa Smith issued a Report and Recommendation to Judge Parker recommending that the Court grant Plaintiff's motion for sanctions against Defendants for repeated discovery violations. Shortly thereafter, the case was reassigned to Judge Deborah Batts. Judge Batts issued a Partial Adoption of the Report and Recommendation on April 4, 2002, granting Plaintiff's motion to dismiss Defendants' counterclaims because of Defendants' repeated refusal to produce initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure and despite Court orders to do so and denying Defendants' request to file an amended answer to include the

affirmative defense of *quantum meruit*. Judge Batts, however, declined to impose monetary sanctions at that time.

On November 12, 2002, Defendants filed a motion to cancel the Notice for pendency, for sanctions, and for attorney's fees. Judge Batts issued an order on November 15, 2002, in part regarding the notice of lis pendens on Defendant's property filed by Plaintiff with the Clerk of Bergen County. Following New Jersey law, the Court ordered that Plaintiffs withdraw the Notice of Pendency against Defendant's property within 20 days. If Plaintiffs failed to withdraw said Notice, the Defendant could move for sanctions against the Plaintiff.

On January 31, 2003, Defendants filed a motion for summary judgment. Plaintiffs filed a cross-motion for summary judgment on February 13, 2003. On February 15, 2003, Defendants filed a motion for sanctions on Plaintiffs for vexations and wanton and oppressive conduct during the course of litigation and to cancel a Notice of Pendency issued by the Bergen County Clerk's Office.

On September 30, 2003, the case was transferred to this Court.

### III.     Cross-Motions for Summary Judgment

#### A.     Standard of Review

Summary judgment is appropriate only if "there is no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*.

The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998)).

When considering cross-motions for summary judgment, the same legal standards apply. A court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004) (citations omitted). A court must deny both parties' motions for summary judgment if it finds the existence of disputed material facts. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Therefore, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id*. at 121.

B.     **Choice of Law**

Plaintiffs argue that in a diversity case a court applies the choice of law rules of the forum state. Accordingly, Plaintiffs state that New York's choice of law rules dictate the application of the law of the state with the "most substantial interest in the issue to be resolved." *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 719 (S.D.N.Y. 1986) (quoting *Wheeler v. Standard Tool & Manuf. Co.*, 359 F. Supp. 298, 301 (S.D.N.Y. 1973), *aff'd* 497 F.2d

897 (2d Cir. 1974)). Plaintiffs, whose legal business is based in New York, maintain that the State of New York has a strong interest in promoting justice and ensuring payment to its lawyers. Therefore, Plaintiffs urge that New York law should govern the state law claims. Defendants, on the contrary, contend that New Jersey law should apply to the non-federal claims. Defendants agree that this Court should utilize New York's choice of law rules, but counter that after applying the rules, New Jersey state law would govern each state law claim.

This Court must apply New York choice of law rules in making determinations as to whether to use New York or New Jersey law.[1] *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). When making a choice of law determination in a contract case, which this case largely is, or in a tort case, New York courts apply the law of the jurisdiction that has the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation. *Bianco v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599, 607-608 (2d Cir. 2001) (citing *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 225-28, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993)); *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). In arguing that this Court should apply New York law, Plaintiffs cite the following contacts with New York: one or more of the discussions or agreements with respect to Plaintiff's compensation were made in New York; Plaintiff's law practice is based in New York; and, if it is determined that Plaintiff performed legal services, then New York would have a strong interest such a claim by one of its lawyers. In arguing that this Court should apply New Jersey law, Defendants cite the following

---

[1] Plaintiffs cite cases that hold where a New York law firm is seeking attorney fees for legal work and representation performed mostly in New York by attorneys who are duly admitted to practice in New York and where the action is brought in New York, New York has the paramount interest in the matter and the applicable law regarding the right to payment of attorney fees and the valuation of such services is that of New York. *See Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 719 (S.D.N.Y. 1986); *Arrow, Edelstein & Gross v. Rosco Productions*, 581 F. Supp. 520 (S.D.N.Y. 1984); *Cruz v. Olympia Trails Bus Co.*, 2003 U.S. Dist. LEXIS 2221, 7-8 (S.D.N.Y. 2003). This Court, however, does not find this authority very persuasive as it has not even been determined whether Plaintiff was performing legal services or business services for which she may or may not be owed.

contacts with New Jersey: one or more of the discussion or agreements with respect to Plaintiff's compensation were made in New Jersey; the Businesses are New Jersey corporations; Plaintiff's work was done for the New Jersey-based corporations; and any torts that allegedly occurred took place in New Jersey. The arguments regarding the choice of law underscore the widespread genuine dispute of material facts in this case. This Court, however, concludes that New York law should be applied because, on balance, New York has a greater interest in the litigation as shown by the nature and extent of the contacts with New York.

C.  **Motions for Summary Judgment**

Plaintiffs moved for summary judgment on their claims of quantum meruit, unjust enrichment, breach of contract, fraud, conversion, intellectual property violations, breach of fiduciary duty to shareholders, and Defendant's personal liability. Defendants have similarly moved for summary judgment on the claims made against them: trademark and copyright infringement, breach of contract, fraudulent inducement, breach of fiduciary duty to shareholders, unjust enrichment/quasi-contract, and conversion. In short, both parties moved for summary judgment on the same claims.

1.  **Breach of Contract, Quantum Meruit Claim, Unjust Enrichment, Conversion, Fraud, and Breach of Fiduciary Duty Claims**

Plaintiffs make several claims directly related to the existence of a contract between the parties regarding Plaintiff's compensation by Defendants. Because this Court finds that each claim has factual components and there are numerous factual disputes between the parties, both parties' summary judgment motions on these claims are denied.

Plaintiff claims that she is entitle to recover quantum meruit. To establish a claim for quantum meruit, a plaintiff must demonstrate that: (1) the plaintiff performed the services in good faith; (2) the defendant accepted the services; (3) the plaintiff expected compensation; and (4) the reasonable value of the services. *See Carey v. Mui-Hun Lau*, 140 F. Supp.2d 291, 297 (S.D.N.Y. 2001) (citing *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 66 (2d Cir. 1999)).

Plaintiffs claim that Defendants were unjustly enriched by Plaintiff's uncompensated services. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (App. Div. 2002)).

Plaintiff claims that Defendant fraudulently induced her to enter each contract when Defendant falsely promised to pay Plaintiff for her services, reimburse her, and repay loans made by her. "To prevail on a fraud claim under New York law, a plaintiff must establish five elements by clear and convincing evidence: 1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000).

Plaintiff claims that Defendant converted common stock at various points, including 17.5% of her equity in August 1999 and 20% of her equity in December 1999, and wrongfully retained Plaintiff's writings, monies, and intellectual property. The tort of conversion constitutes the "unauthorized and wrongful exercise of dominion and control over another's personal

property." *Rohit Phansalkar v. Andersen Weinroth & Co.*, 175 F. Supp. 2d 635, 639-40 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).

Plaintiffs claim that Defendants breached three oral contracts—made in Winter of 1999, August of 1999, and November of 1999—that addressed Plaintiff's compensation for her services performed on behalf of Defendants. To win summary judgment on breach of contract, the parties must, *inter alia*, prove the existence of a contract. Defendants only admit that Defendant agreed to give Plaintiff Wishco stock as was memorialized in the November 1999 agreement but that the contract was conditioned upon Plaintiff's ability to secure venture capital for the corporation. Defendants claim that no definite percentage was ever agreed to, whereas Plaintiff claims that contracts ranging between 17.5-20% were made.

Finally, Plaintiff claims that Defendant breach her fiduciary duties to shareholders by engaging in self-dealing and usurpation of opportunities and by misappropriating corporate assets and committing waste. Defendant responds to Plaintiff's shareholder derivative suit by citing Plaintiff's lack of standing to bring such a suit. A shareholder derivative suit enables an individual shareholder to bring a suit to "enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). Defendants claim that Plaintiffs' allegations all occurred before she was a shareholder. Plaintiff replies that she does make factual allegations of misconduct before and after the stock transfer—which Defendants deny every occurred. Plaintiffs' standing only may be determined based on whether she was conveyed stock by the Defendants, and, if so, when the transfer occurred.

As evidenced by the standards utilized in drawing legal conclusions in these types of claims, none of the claims merit summary judgment for either party due to genuine issues of disputed material facts. It is impossible to meet more than one or a few of the elements for each

of these claims based on the record at hand, regardless of whether the facts are taken in the light most favorable to Plaintiffs or Defendants. No reasonable inferences can be drawn. This Court is unable to conclude whether any finalized agreement or contract was ever entered into or whether it would be legally binding on the parties. The parties state wholly different facts as to any possible agreements or contracts. On the one hand, Plaintiff claims that Defendant agreed to compensate her for the legal and business services and reimburse her for out-of-pocket expenditures on behalf of Defendants. On the other hand, Defendant claims she would compensate Plaintiff only if she successfully attained venture capital for Wishco, no necessary reimbursements have been evidenced, and no legal services were ever requested. This Court has before it a copy of only the November 1999 agreement, the language of which is ambiguous at best. Lacking any agreement on the factual circumstances surrounding the document much less the document itself, this Court can only conclude that there are numerous issues of material facts. Accordingly, the parties' motions for summary judgment on these claims are denied.

### 2. Intellectual Property Claims

Plaintiffs claim that Defendant misappropriated all of Plaintiff's intellectual property, save for one book, by registering them in Defendant's name and claiming 100% ownership of Wishco. Plaintiffs allege that Defendant concealed her modification of Plaintiff's business plan to permit its continued use, retained and continued to use characters, logos, displays, marketing plans, media kits, and marketing tools including the Wizard character and the wasteful modification to add stolen music to the second PowerPoint presentation.

Defendants interpret Plaintiffs' intellectual property claims as including trademark infringement and copyright infringement. The Businesses with the registered trademarks and

copyrights are either wholly or substantially owned by Defendants. Defendants, therefore, argue that this Court appears to lack subject matter jurisdiction over the trademark claim because Plaintiff does not own the trademark(s) in question.

Plaintiff does not claim she is a legal representative, predecessor, successor, or assigns, as required by 15 U.S.C. § 1127. Similarly, Plaintiff never registered a copyright for any of the works she claims are being infringed, and, therefore, she lacks standing to sue. *See* 17 U.S.C. § 411(a). Thus, Plaintiffs lack standing to bring these intellectual property claims. Accordingly, summary judgment is appropriately denied to Plaintiffs on these claims and granted to Defendant. Plaintiffs' intellectual property claims are dismissed.

### 3. Defendant's Personal Liability

Plaintiff argues that the corporate veil should be pierced and Defendant should be personally liable for her own misconduct including fraud, breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and intellectual property violations. Plaintiffs point to the general proposition that personal liability attaches to corporate officers when they enjoy total domination over a corporation. *See Weis v. Selected Meat Packers, Inc.*, 91 A.D.2d 1085, 1086 (3d Dep't 1983); *Dember Constr. Corp. v. Staten Island Mall*, 56 A.D.2d 768, 769 (1st Dep't 1977). Plaintiffs claim that Defendant controlled the Businesses as their sole shareholder and director and perpetually intermingled monies, assets, and personnel. Defendants counter that Plaintiffs never supported their allegations, which they find conclusory, of Defendant's domination and control with any proof.

Because of the existence of disputed material facts, a ruling on piercing the corporate veil is necessarily unavailable because Plaintiffs have not prevailed on their motion for summary

judgment as to the claims of fraud, breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and intellectual property violations.

**IV.     Other Motions**

Defendants have moved to cancel the Notice of Pendency (the "Notice") on Defendant's New Jersey residence and for sanctions. Defendants argue that Plaintiffs filed an unwarranted and groundless Notice in the Bergen County Clerk's office in New Jersey on September 28, 2001. As discussed above, Defendants initially filed this motion on November 12, 2001. The Court assigned to the case at the time directed Plaintiffs to discharge the lis pendens within twenty days of its November 15, 2002. Defendants having discovered that Plaintiffs had not affected the discharge as of January 2003 filed the instant motion. Based on this conduct, Defendants request that this Court issue sanctions against the Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and this Court's inherent powers to regulate the conduct of attorneys in the course of litigation. Defendants assert that the Notice was filed shortly after Defendant's counsel informed Plaintiff that Defendant was attempting to refinance her mortgage.

Plaintiffs contend the motion regarding the Notice is moot because it has been discharged. Plaintiffs explain that the Notice was originally filed because Plaintiffs had become concerned that the Defendant would defraud Plaintiffs by fraudulently transferring assets. Plaintiffs claim Defendant's Long Island home was transferred to Defendant's sister along with other assets going to other siblings. After receiving the Court November 2002 order, however, Plaintiffs claim they sent a letter requesting a discharge of the Notice along with a $3 check to the Bergen County Clerk. Defendants acknowledge Plaintiff's actions but claim they were not

proper procedure (the fee amounted to $5 and Plaintiffs did not fill out a certain form) and therefore did not result in a discharge. After some back and forth that does not require detailing here, Plaintiffs did indeed have the Notice discharged properly and to the Defendants' satisfaction.

The Court agrees with Plaintiffs that the motion regarding the Notice discharge is now moot. Defendants, although conceding that point, still move for sanctions against Plaintiff for bad faith conduct. Plaintiff counters that she acted in good faith and reasonably in trying to discharge the Notice. This Court does not find Plaintiff's conduct sanctionable. Therefore, Defendants' motion for sanctions is denied.

V.  **Conclusion**

Because of the existence of genuine issues of disputed material facts, Plaintiffs' and motion for summary judgment is hereby denied. Defendants' motion for summary judgment is hereby denied in part and granted in part. Defendants' motion regarding the Notice of Pendency is hereby denied as moot. Defendants' motion for sanctions against Plaintiff is hereby denied.

IT IS SO ORDERED.

Dated: White Plains, NY
December 19, 2005

Stephen C. Robinson, U.S.D.J.